## OXLEY v. OXLEY.
### No. 9240.

United States Court of Appeals
District of Columbia.

Argued Nov. 15, 1946.

Decided Dec. 9, 1946.

Mr. Joseph W. Heilman, of Washington, D. C., for appellant.

Mr. H. Clay Espey, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

Leo L. Oxley sued in the District of Columbia for a divorce a vinculo from his wife, Ann Morgan Oxley, a resident of Laurinburg, North Carolina, whom he had married in that state in 1933. He prayed for the custody of his two boys, respectively eleven and six years of age, who were with the mother. He prayed also that a dwelling house in the District of Columbia, held by his wife and himself in tenancy by the entirety, be awarded to him. Process

was served on Ann Morgan in North Carolina.[1] She did not appear and was not represented, except by an attorney appointed by the court with whom she did not cooperate.

After their marriage, the Oxleys lived in North Carolina until 1935, when the husband obtained a position in and removed to Washington. Ann Morgan remained in North Carolina where she was employed as a teacher. Consequently their opportunities to be together were limited to week ends, summer vacations and other holidays.

In 1940, hoping to induce his wife to bring the boys to Washington and establish a family home, Oxley bought a house in the District of Columbia, taking title in both names as tenants by the entirety. The purchase price of $6,000.00 was represented by an existing first trust indebtedness of $4,500.00, the payment of which both assumed, and their joint promissory note for $1,500.00 secured by a second deed of trust. After thus acquiring the property, which was in a dilapidated condition, Oxley expended large sums of his own money in repairing and improving it. And with his own funds exclusively, he paid insurance premiums and taxes, made necessary repairs from time to time, and kept up the payments of interest and principal required by the two deeds of trust. No financial contribution was made by the wife toward acquiring, restoring or maintaining the property[2] and she took no part in meeting the obligations imposed by the trust deeds.

Oxley's hopes were not realized. His wife failed to come and bring the children to establish a home in the house so purchased. On the contrary, she grew more indifferent toward her husband and in 1942 wrongfully and unjustifiably abandoned him.

Having found the facts to be substantially as above, the District Court granted an absolute divorce to the husband. But it decreed that the custody of the children should remain with the mother, and it declined to award the sole ownership of the real estate to the husband. Oxley complains that the trial court erred in making any order concerning the custody of the children, since they and their mother were not in this jurisdiction, and in refusing to dissolve the tenancy by the entirety and to adjudge him entitled to the property.

Although the domicile of a wife ordinarily follows that of her husband, it is not so in this case. When Oxley left North Carolina in 1935, it was by agreement that his wife remained there and so her domicile remained in that state, despite the fact that he established a new domicile for himself in the District of Columbia.[3] Title 21, § 101, District of Columbia Code (1940) provides that the father and mother shall be the natural guardians of the persons of their minor children. That being true, the father and mother are equally entitled to the custody of their infant children. In such circumstances, if the father and mother have separate domiciles, minor children take the domicile of the parent with whom they actually live.[4] The Oxley children have, therefore, always been domiciled in North Carolina and were not in any manner subject to the authority of the trial court. Consequently the District Court erred in making an award of custody, even to the mother.

The court's refusal to award to Oxley the ownership of the house was also error. When title to real estate is taken jointly in the names of husband and wife, the husband furnishing all the consideration, it is well settled that the inclusion of the wife is supported by no consideration except her faithful observance of the marriage vows as long as the martial status subsists. Her promise to do so is an implied covenant in the deed, and a subsequent wrongful breach of the vows causes a failure of the continuing consideration and

---

[1] Under the substituted service provision of the District of Columbia Code (1940), Title 13, § 108.

[2] Joining with her husband in assuming the payment of the first trust indebtedness and in executing the note for $1,500 did not amount to such furnishing of consideration as to entitle her to a share in the property on that account only. Osborne v. Osborne, 59 App.D.C. 288, 40 F.2d 800.

[3] Restatement of the Law of Conflict of Laws, § 28.

[4] Id. § 32.

works a forfeiture of the property right conferred on her by the deed. This principle, which was enunciated by this court in Moore v. Moore, 51 App.D.C. 304, 278 F. 1017, and Osborne v. Osborne, 59 App. D.C. 288, 40 F.2d 800, was not changed by the enactment of Title 16, § 409, of the District of Columbia Code (1940), as was specifically pointed out in Richardson v. Richardson, 72 App.D.C. 67, 112 F.2d 19. There we observed that the code provision adopted in 1935 merely worked a procedural change. While the District Court has the right and duty under the statute, as indeed it had even before its enactment, to exercise a sound judicial discretion in adjusting the property rights of the parties, it is an abuse of discretion to fail to award to the husband the ownership of property when, as here, the wife furnished no part of the money necessary to acquire the property and has completely forfeited her interest in it by her failure to live up to the marriage covenants. So much of the judgment as dealt with the custody of the children and the title to the property is reversed, and the case is remanded for the entry of a decree framed in accordance with this opinion.[5]

Reversed.

---

[5] The following statement from this court's opinion in Osborne v. Osborne, 59 App.D.C. 288, 40 F.2d 800, 802, is applicable here:

"The court in its decree can require the plaintiff to execute a bond to hold the defendant free from any liability arising through his failure to discharge the deeds of trust, which will protect her until the trusts are discharged either by payment in full or by a process of refinancing by the plaintiff."